IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

TRICIA GARCIA,

       Plaintiff,

v.

TOWN OF DAVIE,

       Defendant.

_____

PLAINTIFF DEMANDS
A TRIAL BY JURY

CASE NO.: 0:21-cv-61726

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Tricia Garcia (hereinafter referred to as "Plaintiff" or "**Ms. Garcia**"), by and through undersigned counsel, brings this action against Defendant, TOWN OF DAVIE (hereinafter referred to as "Defendant Davie"), and alleges as follows:

### INTRODUCTION

1. This case is about a disabled administrator whose government and/or quasi-governmental employer subjected her to an unrelenting hostile work environment and interfered with her requests for a reasonable accommodation before orchestrating a scheme to induce her to resign because of her disability.

2. Plaintiff Tricia Garcia brings this action pursuant to Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("**Section 504**") to redress the deprivation of her rights, privileges and to further redress the Defendant's unlawful employment practices.

3. Plaintiff seeks monetary relief to redress Defendant Davie's unlawful employment practices in violation of the Section 504 for discriminating against Plaintiff because of her disability.

4. At bottom, the Defendant is liable for depriving Plaintiff of her personal dignity and her civil and constitutional rights to pursue an equal employment opportunity in an environment free of relentless discrimination.

## JURISDICTION, AND VENUE

5. The Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 (federal question) and 1343(a)(3) (civil rights), and §1367 (supplemental jurisdiction), as this action entails questions of law pursuant to Section 504.

6. Venue is proper in the Southern District of Florida, Fort Lauderdale Division under 28 U.S.C. § 1391(b) because the acts or omissions giving rise to this action occurred in the Southern District of Florida's jurisdiction within Broward County.

## PARTIES

7. Plaintiff Tricia Garcia was and is an individual, disabled, woman who did and continues to reside in Davie, Florida within Broward County.

8. Plaintiff has an implied right of action to bring this suit pursuant and an express right of action pursuant to Section 504.

9. Defendant Town of Davie is a governmental entity and political subdivision of the State of Florida, duly existing and established pursuant to the laws of Florida

10. Defendant Davie is a public entity within the meaning of Title II of the Americans with Disabilities Act and, at all times relevant, was and continues to be the recipient of federal financial assistance under the Rehabilitation Act of 1973.

11. At all times material, Defendant Davie does and continues to do business in Davie, Florida within Broward County, with its principal address at 6591 Orange Drive, Davie, FL 33037.

12. At all relevant times, Defendant Davie has been continuously doing business in the State of Florida and have continuously held at least 15 employees throughout all relevant calendar years. At all relevant times, Defendant Davie has continuously been an employer engaged in an industry affecting commerce.

13. At all material times, Plaintiff was employed by the Town of Davie.

14. Glenda Martinez ("**Ms. Martinez**") is an individual woman residing in the State of Florida. Ms. Martinez, a Davie employee, worked as the "Director of Housing and Community Development." Ms. Martinez held direct supervisory authority over Plaintiff, controlling various terms and conditions of Plaintiff's employment.

15. Grace Garagozzo ("**Ms. Garagozzo**") is an individual woman residing in the State of Florida. Ms. Garagozzo, a Davie employee, worked as the "Director of Human Resources." Ms. Garagozzo held direct supervisory authority over Plaintiff, controlling various terms and conditions of Plaintiff's employment.

16. Danielle [Last Name Unknown] ("**Danielle**") is an individual woman residing in the State of Florida. Danielle, a Davie employee, worked as the "Human Resources Specialist."

## FACTUAL ALLEGATIONS

17. Plaintiff Tricia Garcia is a 32-year-old disabled woman.

18. On or about December 16, 2019, Defendant Davie hired Ms. Garcia as a "Secretary."

19. Prior to the outset of her employment with Defendant Davie, Ms. Garcia's physicians diagnosed her with both depression and Premenstrual Dysphoric Disorder ("PMDD"). PMDD is a chronic and highly severe form of premenstrual syndrome ("PMS").

20. At all times material, both of the Plaintiff's disabilities were diagnosed by her psychiatrist and managed by her therapist respectively. The original diagnosis was made in or around 2014. Plaintiff was subsequently diagnosed in or around January 2016 after the birth of her second child. Her physician prescribed medication for her, but Plaintiff did not have insurance and could not get the medication. In or around the fall 2019, started taking medication for her PMDD and depression.

21. As a result of her dual diagnoses, result in both psychological and physical symptoms. Ms. Garcia suffers from debilitating symptoms including but not limited to irritability, agitations, anger, insomnia, difficulty with concentration, severe fatigue, anxiety, confusion, severe abdominal cramps, bloating, nausea vomiting, headaches, dizziness, pelvic pressure, and back pain.

22. Plaintiff's PMDD symptoms typically would "flare-up" in the two-week period leading up to her menstrual cycle, typically beginning after ovulation and continuing for a period of approximately two weeks.

23. At all times, these symptoms were inconsistent as they were further exacerbated by external stressors.

24. At all times material, Ms. Garcia's conditions caused her frustration, as she would suffer from what she referred to as "brain-fog" during flare-ups.

25. At times, Ms. Garcia would have trouble finding the right word (for example, she would not recall the word "scissors" and instead say "the cutting-thing).

26. Additionally, Ms. Garcia would have to seek clarification or repeated instructions for work from Ms. Martinez. To further worsen the matter, the instructions Ms. Martinez were often related to topics that were not familiar to Ms. Garcia, such as preparing financial budget

reports, as she was learning and training with new concepts as a new employee. However, Ms. Martinez would become openly impatient and belittle Ms. Garcia when she would ask her to repeat instructions.

27. Ms. Garcia asked if she could record Ms. Martinez's instructions so that she could play them back to herself and make sure she fulfilled her task correctly, Ms. Martinez summarily refused without justification or explanation. Ms. Martinez's behavior was both unhelpful and hostile, which had the effect of exacerbating Ms. Garcia's symptoms.

28. In or around January 2020, because of the growing hostility at work, Ms. Garcia informed Ms. Martinez about her condition, the mental health ailments of PMDD and depression, and provided all appropriate supporting documentation.

29. Ms. Garcia was open with her supervisor regarding her diagnosis of PMDD and need for an accommodation as a result. Ms. Garcia explained that having just received her insurance through work, she had just begun taking medication to treat her PMDD and depression, and while it would take a little time to start working, she was hopeful that it would improve her condition and, as a result, her performance at work. Ms. Garcia requested the reasonable accommodation of continuing her therapeutic and psychiatric appointments without fear of retaliation by Martinez. She further requested an accommodation in that they discuss the possibility of recording conversations, meetings, etc. to allow for Ms. Garcia to transcribe, thereby alleviating the repetitive instructions and stress caused by such.

30. To her surprise, Ms. Martinez not only denied the requests but further heightened her hostility towards Ms. Garcia.

31. After Ms. Garcia disclosed her disabilities to her, Ms. Martinez openly and frequently belittled Ms. Garcia because of her disabilities. By way of example, Ms. Martinez

attempted to diminish and marginalize Ms. Garcia's diagnosis, stating, "you are being too sensitive, we all have PMS." Ms. Martinez was fully aware of the severity and distinction between PMS and PMDD.

32. Furthermore, Ms. Martinez in fact made it more challenging for Ms. Garcia to perform her job functions by avoiding every speaking with Ms. Garcia directly.

33. This demeaning behavior, along with the lack of communication with her supervisor, created a hostile work environment in which Ms. Martinez made it systematically impractical, if not impossible, for Ms. Garcia to perform her essential job functions.

34. In or around February 2020, Ms. Garcia reported the discriminatory treatment to Defendant's Human Resources Specialist, Danielle. Danielle asked Ms. Garcia if she wanted to initiate an investigation since Ms. Garcia's supervisor was treating her poorly after she requested the accommodation. Ms. Garcia explained the Danielle that she feared retaliation, including most importantly being terminated. Danielle insisted that she had to start an investigation.

35. As feared by Ms. Garcia, shortly thereafter it became known that Ms. Garcia complained. Ms. Martinez continued to escalate her hostility avoiding Ms. Garcia at all costs and encouraging Ms. Garcia's colleagues to begin harassing and instigating Ms. Garcia.

36. On or about February 12, 2020, as a result of Defendant's discriminatory and retaliatory treatment, Ms. Garcia contacted Defendant's Director of Human Resources, Ms. Garagozzo. Ms. Garcia requested she be transferred to another department wherein her disability would be accommodated. Initially, Ms. Garcia requested the opportunity to be transferred to a Public Relations Coordinator position that was being advertised as vacant. However, Ms. Garagozzo told Ms. Garcia that Ms. Garcia could not apply for that position, as they "already had

someone in mind." Ms. Garcia was disappointed that Defendant would not even consider her for the position.

37. Ms. Garagozzo then told Ms. Garcia that there was an opening for the position of "Permit Clerk" in a different department. Instead of accommodating Ms. Garcia's request, Ms. Garagozzo informed Ms. Garcia that she would have to apply for the Permit Clerk position like everyone else.

38. Left with no alternative action and in light of the continued hostility and refusal to make a simple accommodation within her own department, Ms. Garcia applied for the open position.

39. On or about February 14, 2020, Plaintiff scheduled a meeting with Defendant's management team wherein she believed they would get on the same page about her disability and prior complaints. This meeting was proposed by Ms. Garagozzo because she felt Plaintiff may be overly "sensitive." Plaintiff provided Ms. Garagozzo then told Ms. Garcia documents relating to her diagnosis in an effort to explain how PMDD presents and impacts Plaintiff. During the meeting, Ms. Garcia issued Plaintiff a Standards and Procedures write up prepared following Plaintiff's complaint to Human Resources.

40. On or about February 18, 2020, Plaintiff left early to attend and appointment with her therapist. Defendants were fully aware of her leaving early and the specific need. Plaintiff provided her therapist a copy of medical request forms to be completed and sent to Defendants.

41. On or around the morning of February 19, 2020, Defendants received a copy of Plaintiff's medical records and leave accommodation request from her physician.

42. On or about February 19, 2020, Defendants retaliated against Plaintiff by Placing her on reduced pay/leave of absence. Plaintiff was required to be at home at all times to be on

"stand by" in the event defendants decided she was needed. As a result, she was unable to meet with her therapist. Plaintiff was constantly worried she would miss a call.

43. Defendant demanded that Ms. Garcia turn in her ID badge and keys. Defendant's management team instructed Ms. Garcia that she was prohibited from returning to the building or contacting anyone that worked therein. Furthermore, Defendant proceeded to humiliate Ms. Garcia, treating her like a common criminal as she was escorted from the building.

44. Ms. Garcia was humiliated and extremely insulted, and again begged for an explanation. Nonetheless, Defendant refused to give Ms. Garcia any justification for their actions. Ms. Garcia was in tears as she gathered her personal belongings and was escorted from the building.

45. On or around February 20, 2020, much to her surprise, Defendant contacted Ms. Garcia and asked if she was still interested in the "Permit Clerk" position. Ms. Garcia told Defendant that she was still interested, and Defendant agreed to set up an interview.

46. In an attempt to avoid any conflicts/issues, Ms. Garcia immediately contacted Danielle in the Human Resources Department and asked if she could interview for the "Permit Clerk" position while on leave. Ms. Garcia was concerned because Danielle had previously told Ms. Garcia that she was not allowed on premises. Danielle advised Ms. Garcia that she was not permitted to interview; however, Danielle subsequently corrected her misrepresentation and told Ms. Garcia that she was permitted to interview for the position despite being on leave. Danielle was present during Ms. Garcia's interview and Ms. Garcia was not offered the position.

47. On or about March 3, 2020, Defendant Davie, by and through its managers and human resources department, unlawfully terminated Ms. Garcia. Defendant Davie wrongfully terminated Plaintiff in violation of the Rehabilitation Act of 1973 as codified 29 U.S.C. § 793.

48. At all relevant times, Plaintiff was and continued to be qualified for the positions she held and for the various positions she maintained with Defendant Davie.

49. The above are just some examples of the conduct which the Defendant Davie subjected Plaintiff to on a repeated an ongoing basis.

50. The Defendant Davie unlawfully discriminated against Plaintiff because of her disability and as a result of her complaints of unlawful conduct.

51. Plaintiff claims a continuous practice of discrimination and claims that the Defendant are subjecting her to continuing violations and makes all claims herein under the continuing violations doctrine.

52. As a result of the Defendant Davie's unlawful conduct, Plaintiff has suffered damages, including but not limited to financial and economic damages, lost wages (back pay and front pay) and benefits, advancement opportunities with Defendant, and continues to suffer the same.

53. Plaintiff claims aggravation, activation, and/or exacerbation of any preexisting conditions.

54. Plaintiff has also suffered emotional distress, mental anguish, loss of personal dignity, and other intangible damages.

55. At bottom, Defendant Davie is liable for intentionally depriving Ms. Garcia of her clearly established rights secured by Constitution and laws of the United States and the state of Florida.

## CAUSES OF ACTION

### COUNT I
### 29 U.S.C. § 794
### Disability Discrimination in Violation of the Rehabilitation Act of 1973
### (Failure to Accommodate)

56. Plaintiff reincorporates the allegations in paragraphs 17-53.

57. Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, provides that:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

58. Ms. Garcia is an individual with a disability under the Rehabilitation Act.

59. At all times relevant, Defendant Davie has been a recipient of federal financial assistance bringing Defendant under Section 504 the Rehabilitation Act which prohibits discrimination against qualified or otherwise qualified individuals in the recipient's "programs or activities."

60. The Rehabilitation Act defines "program or activity" to mean all of the operations of a department, agency, special purpose district, or other instrumentality of State or local government. Defendants are a state government and/or an agency of a state government. *29 U.S.C. § 794(b)(1)(A)*.

61. Prior to the outset of her employment with Defendant Davie, Ms. Garcia's physicians diagnosed her with both depression and Premenstrual Dysphoric Disorder ("PMDD"). PMDD is a chronic and highly severe form of premenstrual syndrome ("PMS"). Both depression and PMDD are disability that substantially limit at least one of Ms. Garcia's major life activities.

62. As a result of her dual diagnoses, result in both psychological and physical symptoms. Ms. Garcia suffers from debilitating symptoms including but not limited to irritability, agitations, anger, insomnia, difficulty with concentration, severe fatigue, anxiety, confusion, severe abdominal cramps, bloating, nausea vomiting, headaches, dizziness, pelvic pressure, and back pain.

63. Defendant, by and through Ms. Garcia's advising of her managers and Human Resources, were fully aware and on notice of Ms. Garcia's diagnoses.

64. Ms. Garcia was fully qualified to be a "Secretary" and was able to perform all the essential functions of the position. Furthermore, Ms. Garcia was fully qualified to be a "Permit Clerk" and would have been able to perform all the essential functions of the position.

65. Defendant, by and through Plaintiff's Supervisor, Ms. Martinez and the decision of their own Human Resources department discriminating against Plaintiff Garcia solely on account of her disability.

66. Defendant Davie refused to accommodate Plaintiff's disability, including the refusal to transfer Plaintiff to an otherwise open and comparable position.

67. Plaintiff made repeated requests to her manager, Ms. Garcia, for reasonable options to record and subsequently transcribe instructions as to aid Plaintiff in her job function. This request required no additional cost or time to the Defendant.

68. Ms. Garcia's decision to refuse Ms. Garcia's requests were solely due to Ms. Garcia's disability as no other reasonable explanation existed.

69. As a result of Defendant's intentional deprivation of Plaintiff's equal protection rights, Plaintiff has suffered damages.

70. As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of the Section 504, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages.  Plaintiff accordingly demands lost economic damages, lost wages,

back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

71. Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights under the Section 504, warranting the imposition of punitive damages in addition to compensatory damages.

72. Plaintiff further requests attorney's fees and costs be awarded as permitted by law.

## COUNT II
## 29 U.S.C. § 794
### Disability Discrimination in Violation of the Rehabilitation Act of 1973
### (Unlawful Termination)

73. Plaintiff reincorporates the allegations in paragraphs 17-53.

74. Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, provides that:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

75. Ms. Garcia is an individual with a disability under the Rehabilitation Act.

76. At all times relevant, Defendant Davie has been a recipient of federal financial assistance bringing Defendant under Section 504 the Rehabilitation Act which prohibits discrimination against qualified or otherwise qualified individuals in the recipient's "programs or activities."

77. The Rehabilitation Act defines "program or activity" to mean all of the operations of a department, agency, special purpose district, or other instrumentality of State or local government. Defendants are a state government and/or an agency of a state government. *29 U.S.C. § 794(b)(1)(A).*

78. Prior to the outset of her employment with Defendant Davie, Ms. Garcia's physicians diagnosed her with both depression and Premenstrual Dysphoric Disorder ("PMDD"). PMDD is a chronic and highly severe form of premenstrual syndrome ("PMS"). Both depression and PMDD are disability that substantially limit at least one of Ms. Garcia's major life activities.

79. As a result of her dual diagnoses, result in both psychological and physical symptoms. Ms. Garcia suffers from debilitating symptoms including but not limited to irritability, agitations, anger, insomnia, difficulty with concentration, severe fatigue, anxiety, confusion, severe abdominal cramps, bloating, nausea vomiting, headaches, dizziness, pelvic pressure, and back pain.

80. Defendant, by and through Ms. Garcia's advising of her managers and Human Resources, were fully aware and on notice of Ms. Garcia's diagnoses.

81. Ms. Garcia was fully qualified to be a "Secretary" and was able to perform all the essential functions of the position. Furthermore, Ms. Garcia was fully qualified to be a "Permit Clerk" and would have been able to perform all the essential functions of the position.

82. Defendant, by and through Plaintiff's Supervisor, Ms. Martinez and the decision of their own Human Resources department discriminating against Plaintiff Garcia solely on account of her disability.

83. Defendant Davie ultimately unlawfully terminated Plaintiff solely due to her disability.

84. As a result of Defendant's intentional deprivation of Plaintiff's equal protection rights, Plaintiff has suffered damages.

85. As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of the Section 504, Plaintiff has suffered and will continue to suffer financial and

economic damages in the form of lost wages (front and back pay) and lost benefits. Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

86. Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights under the Section 504, warranting the imposition of punitive damages in addition to compensatory damages.

87. Plaintiff further requests attorney's fees and costs be awarded as permitted by law.

## COUNT III
## 29 U.S.C. § 794
### Retaliation in Violation of the Rehabilitation Act of 1973

88. Plaintiff reincorporates the allegations in paragraphs 17-53.

89. Plaintiff reincorporates the allegations in paragraphs 17-53.

90. Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, provides that:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

91. Ms. Garcia is an individual with a disability under the Rehabilitation Act.

92. At all times relevant, Defendant Davie has been a recipient of federal financial assistance bringing Defendant under Section 504 the Rehabilitation Act which prohibits discrimination against qualified or otherwise qualified individuals in the recipient's "programs or activities."

93. The Rehabilitation Act defines "program or activity" to mean all of the operations of a department, agency, special purpose district, or other instrumentality of State or local government. Defendants are a state government and/or an agency of a state government. *29 U.S.C. § 794(b)(1)(A)*.

94. Prior to the outset of her employment with Defendant Davie, Ms. Garcia's physicians diagnosed her with both depression and Premenstrual Dysphoric Disorder ("PMDD"). PMDD is a chronic and highly severe form of premenstrual syndrome ("PMS"). Both depression and PMDD are disability that substantially limit at least one of Ms. Garcia's major life activities.

95. As a result of her dual diagnoses, result in both psychological and physical symptoms. Ms. Garcia suffers from debilitating symptoms including but not limited to irritability, agitations, anger, insomnia, difficulty with concentration, severe fatigue, anxiety, confusion, severe abdominal cramps, bloating, nausea vomiting, headaches, dizziness, pelvic pressure, and back pain.

96. Defendant, by and through Ms. Garcia's advising of her managers and Human Resources, were fully aware and on notice of Ms. Garcia's diagnoses.

97. Ms. Garcia was fully qualified to be a "Secretary" and was able to perform all the essential functions of the position. Furthermore, Ms. Garcia was fully qualified to be a "Permit Clerk" and would have been able to perform all the essential functions of the position.

98. Defendant, by and through Plaintiff's Supervisor, Ms. Martinez and the decision of their own Human Resources department discriminating against Plaintiff Garcia solely on account of her disability. Defendant Davie refused to accommodate Plaintiff's disability, refused to transfer Plaintiff and ultimately unlawfully terminated Plaintiff.

99. Plaintiff made repeated requests to her manager, Ms. Garcia, for reasonable options to record and subsequently transcribe instructions as to aid Plaintiff in her job function. This request required no additional cost or time to the Defendant.

100. Ms. Garcia's decision to refuse Ms. Garcia's requests were solely due to Ms. Garcia's disability as no other reasonable explanation existed.

101. In or around February 2020, Ms. Garcia reported the discriminatory treatment to Defendant's Human Resources Specialist, Danielle. Danielle asked Ms. Garcia if she wanted to initiate an investigation since Ms. Garcia's supervisor was treating her poorly after she requested the accommodation. Ms. Garcia explained the Danielle that she feared retaliation, including most importantly being terminated. Danielle insisted that she had to start an investigation.

102. As feared by Ms. Garcia, shortly thereafter it became known that Ms. Garcia complained. Ms. Martinez continued to escalate her hostility avoiding Ms. Garcia at all costs and encouraging Ms. Garcia's colleagues to begin harassing and instigating Ms. Garcia.

103. On or about February 12, 2020, as a result of Defendant's discriminatory and retaliatory treatment, Ms. Garcia contacted Defendant's Director of Human Resources, Ms. Garagozzo. Ms. Garcia requested she be transferred to another department wherein her disability would be accommodated.

104. On or about February 14, 2020, Plaintiff scheduled a meeting with Defendant's management team wherein she believed they would get on the same page about her disability and prior complaints. This meeting was proposed by Ms. Garagozzo because she felt Plaintiff may be overly "sensitive." Plaintiff provided Ms. Garagozzo then told Ms. Garcia documents relating to her diagnosis in an effort to explain how PMDD presents and impacts Plaintiff. During the

meeting, Ms. Garcia issued Plaintiff a Standards and Procedures write up prepared following Plaintiff's complaint to Human Resources.

105. On or about February 18, 2020, Plaintiff left early to attend and appointment with her therapist. Defendants were fully aware of her leaving early and the specific need. Plaintiff provided her therapist a copy of medical request forms to be completed and sent to Defendants.

106. On or around the morning of February 19, 2020, Defendants received a copy of Plaintiff's medical records and leave accommodation request from her physician.

107. On or about February 19, 2020, Defendants retaliated against Plaintiff by Placing her on reduced pay/leave of absence. Plaintiff was required to be at home at all times to be on "stand by" in the event defendants decided she was needed. As a result, she was unable to meet with her therapist. Plaintiff was constantly worried she would miss a call.

108. Defendant demanded that Ms. Garcia turn in her ID badge and keys. Defendant's management team instructed Ms. Garcia that she was prohibited from returning to the building or contacting anyone that worked therein. Furthermore, Defendant proceeded to humiliate Ms. Garcia, treating her like a common criminal as she was escorted from the building.

109. Ms. Garcia was humiliated and extremely insulted, and again begged for an explanation. Nonetheless, Defendant refused to give Ms. Garcia any justification for their actions. Ms. Garcia was in tears as she gathered her personal belongings and was escorted from the building.

110. On or about March 3, 2020, Defendant Davie, by and through its managers and human resources department, unlawfully terminated Ms. Garcia.

111. Defendant Davie unlawfully terminated Plaintiff Garcia because she engaged in a protected act by complaining on more than one action as detailed above.

112. As a result of Defendant's intentional deprivation of Plaintiff's equal protection rights, Plaintiff has suffered damages.

113. As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of the Section 504, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits. Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

114. Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights under the Section 504, warranting the imposition of punitive damages in addition to compensatory damages.

115. Plaintiff further requests attorney's fees and costs be awarded as permitted by law.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff demands judgment against Defendant Davie, respectively as enumerated below, the following relief:

A. An order directing Defendant Davie to place Plaintiff in the position she would have had but for Defendant's discriminatory, retaliatory and/or otherwise unlawful treatment of Plaintiff.

B. An award of damages against Defendant Davie, in an amount to be determined at trial, plus prejudgment interest to compensate Plaintiff for all monetary and/or economic damages, including, but not limited to, the loss of past and future income, wages, compensation, job security and other benefits of employment;

      C.      An award of damages against Defendant Davie, in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including but not limited to compensation for her severe mental anguish and emotional distress, humiliation, depression, embarrassment, stress and anxiety, loss of self-esteem, self-confidence, personal dignity, the opportunity to pursue an equal employment opportunity, and emotional pain and suffering and other physical or mental injuries;

      D.      An award of damages against Defendant Davie, in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for harm to her professional and personal reputation and loss of career fulfillment.

      E.      An award of damages against Defendant Davie for any and all other monetary and/or non-monetary losses suffered by Plaintiff in an amount to be determined at trial, plus prejudgment interest.

      F.      An award of liquidated damages against Defendant Davie.

      G.      An award as against Defendant Davie for costs that Plaintiff has incurred in this Action, as well as Plaintiff's reasonable attorneys' fees plus costs and interest to the fullest extent permitted by law; and

      H.      Such other and further relief the Court deems just and proper.

## **JURY DEMAND**

Plaintiff hereby demands a jury trial of all issues so triable pursuant to Plaintiff's express right to a jury trial conferred by Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.

| | |
|---|---|
| Dated: August 17, 2021<br>Miami, Florida | **DEREK SMITH LAW GROUP, PLLC**<br><br>_____<br>Caroline H. Miller, Esq.<br>FL Bar No. 1012331<br>701 Brickell Ave., Suite 1310<br>Miami, Florida 33131<br>Phone: (305) 946-1884<br>Email: caroline@dereksmithlaw.com<br><br>*Attorneys for Plaintiff Tricia Garcia* |

2